UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TERRENCE THOMAS, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *   Civil Action No. 21-10398-ADB |
| | * |
| BARNSTABLE COUNTY CORRECTIONAL | * |
| FACILITY, et al. | * |
| | * |
| Defendants. | * |

<u>MEMORANDUM AND ORDER</u>

BURROUGHS, D.J.

Terrence Thomas, a pretrial detainee who was confined at the Barnstable County Correctional Facility ("BCCF") at the time he filed his original complaint, brings this action in which he alleges that certain conditions of confinement at BCCF[1] have violated his federal rights. Defendant Kerry Jarvis has filed a motion to dismiss, or, in the alternative, for a more definite statement. [ECF No. 37]. The other three defendants filed a motion for a more definite statement. [ECF No. 40]. For the reasons stated below, the Court will DENY in part and GRANT in part Jarvis's motion and DENY the motion of the other three defendants. The Court will also deny three motions filed by Thomas.

**I. Background**

    **A. Original Complaint**

In his original complaint [ECF No. 1], Thomas alleged that unidentified BCCF employees unlawfully tampered with and otherwise interfered with his mail. Thomas also alleged that one correctional officer verbally harassed him because of his race. Thomas further

---

[1] In his most recent filing, Thomas indicates that he is housed at the Bristol County House of Correction. [ECF No. 49].

claimed that BCCF staff unlawfully recorded a conversation between him and his attorney and then sent the recording to the District Attorney's Office for the purpose of interfering in the criminal prosecution against him.

Finally, Thomas claimed that, for twenty-one months, a medical provider at BCCF refused to give him treatment for his mental health issues, and that, as a result, his mental health deteriorated. Thomas represented that this medical provider continued to withhold treatment even after staff of the Prisoners' Legal Services of Massachusetts ("PLS") wrote three letters to BCCF concerning Thomas's request for mental health care. Thomas later filed copies of two letters from PLS to BCCF concerning his need for mental health care. [ECF No. 13 at 3, 5-6].

In accordance with 28 U.S.C. §§ 1915(e)(2) and 1915A, the Court conducted a preliminary review of Thomas's complaint and concluded that the pleading failed to state a claim upon which relief could be granted because Thomas had not adequately identified the alleged misconduct of each defendant. In its June 2, 2021 order, the Court ordered Thomas to file an amended complaint containing factual allegations from which the Court could reasonably infer that each defendant was directly involved a violation of his federal rights. [ECF No. 16]. The Court also stated that the amended complaint would completely replace the original complaint and that the Court would review the sufficiency of the amended complaint without reference to the original complaint or any material that Thomas had included in his earlier-filed motion to amend.

    B.    **Amended Complaint**

On July 1, 2021, Thomas filed his amended complaint, [ECF No. 22],[2] in which he sets forth the following allegations:

---

[2] Thomas's filing was entitled "Motion to Amend the Above Civil Action." [ECF No. 19]. Notwithstanding the title of the document and a one-sentence request to amend his complaint,

1.      On 7-29-20 at 4:20am I was awakened- out of my sleep by Officer Steve Montaldo, who tried to forcibly make me take legal mail from my attorney that the jail has held from 7-22-20 to 7-29-20. I didn't take it cause it was ripped open. Also Captain Fernandes was present also. Then Officer Montaldo brought the legal mail back to me. They had removed documents and replaced them with false documents.

2.      <u>Officer Conely</u> singled me out on November 12, 2020. He came to work with M.A.G.A. on. Officer Conely started verbally attacking me and harassing me. Also I'm the only minority in the pod, at the same time the white inmates were breaking the rules he said nothing to them, just continued to single me out. This occurred after the election, and he was racially discriminating against me.

3.      Officer Steve Montaldo. On 10-14-20 3 letters from Superior Court which were legal mail that contained legal material was opened and placed in the handle of my door by Officer Steve Montaldo. This was done purposefully done. It's the third time this has happened. I showed the three letters to Lt. Comoletti who said this is above his pay grade. I have been targeted by these officers. I fear for my safety and the safety of my case while I'm here at Barnstable County Corrections.

4.      Steve Montaldo & Major Montero. The mail being sent from my family is being thrown away by jail officers. Major Montero is well aware of this and did nothing. My family sent the same mail 3 times and not once did I receive it.

5.      Major Montero. On October 21, 20, me and my attorney was placed inside a room with a live camera and microphone. These violations have been going on for some time. I put in a grievance and wrote Major Montero. Personally I will put the form in as an exhibit, everytime major Montero has denied to investigate these claims based on reliable evidence. Major Montero told me that I would never win against him or his officers. These officers named in this civil action have been violating my rights and sabotaging my case on behalf o the D/A Office and Officers who have connections to Falmouth PD to cover up their crimes for them. I'm in fear of my safety and the safety of my case.

---

the body of the document appeared to be an amended complaint that Thomas filed in response to the Court's June 2, 2021 order. The Court granted the motion to amend and ordered that the document be placed on the docket as an amended complaint. [ECF No. 21].

The Court notes that, on July 23, 2021, just one week after the Court ordered that summonses issue, Thomas filed a letter in which he stated that he did not have a copy of the amended complaint and asked for the same. [ECF No. 26]. Although a staff note on the docket indicates that a deputy clerk mailed a pleading to Thomas in response to this letter, it is unclear whether the deputy clerk mailed Thomas a copy of the original complaint or a copy of the amended complaint.

      6.      Kerry Jarvis. Kerry Jarvis is the head of mental health at Barnstable County Corrections has refused to give me help, my mental condition. Has refused to give me medicine that I'm prescribed by my doctor for severe PTSD. From 6-23-619 [to] 1-21-2021, I informed the staff of my mental issues and they refused to help me. Kerry Jarvis continued to withhold treatment even after prison legal services wrote three letters to BCCF concerning my mental health status. And my mental health state has deteriorated badly. This was all based on racial discrimination from Kerry Jarvis and Superintendent Alter.

      7.      I have enclosed my letter to the sheriff also I have done everything that I could to get help. The officer's within the jail from Lt. Comeletti to Major Montero, Superintended Alter, and the Sheriff of Barnstable County were made aware of my situation and did nothing.

Am. Compl. ¶¶ 1-6 (as in original).

Thereafter, defendant Jarvis filed his motion for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, or, in the alternative, a motion under Rule 12(e) for a more definite statement and a memorandum in support thereof, [ECF Nos. 37, 38], and defendants Conley, Montaldo, and Montero filed their motion under Rule 12(e) for a more definite statement and a supporting memorandum [ECF Nos. 40, 41].[3]

---

[3] When the Court ordered that summonses issue, the Court specified that the amended complaint should be served with each summons. [ECF No. 23]. All the defendants represent that they were served with a summons and the original complaint instead of the amended complaint, and they state that they are not waiving their rights as to improper service. [ECF No. 38 at 2 n.1]; [ECF No. 41 ¶ 6].

    The defendants' purported reservations of their rights as to improper service does not preserve that defense. Under Rule 12 of the Federal Rules of Civil Procedure, a party may assert seven defenses by motion, including the defenses of insufficient process and insufficient service of process. Fed. R. Civ P. 12(b)(4), (5). However, with some exceptions not applicable here, "a party that makes a motion under [Rule 12] must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). The defendants in this action "omitted" any defense of improper service by failing to explicitly move for dismissal on that ground. *See, e.g.*, *Boston Telecomm. Grp., Inc. v. Deloitte Touche Tohmatsu*, 249 Fed.App'x 534, 536 (9th Cir. 2007) (holding that a defendant waived his right to assert the defense of personal jurisdiction where he did not raise it in his first motion to dismiss, even when he inserted a footnote in his brief stating that he "reserves his rights and objections to file a supplemental motion to dismiss" based on personal jurisdiction). The defendants have therefore waived any defense of improper service. *See* Fed. R. Civ. P. 12(h)(1)(A).

## II. Standard of Review

### A. Motion for Dismissal under Rule 12(b)(6)

Under Rule 12(b)(6), a defendant may move for dismissal of a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[T]he propriety of dismissal under Rule 12(b)(6) turns on the complaint's compliance with Rule 8(a)(2) [of the Federal Rules of Civil Procedure], which mandates that every complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 8 (1st Cir. 2011) (quoting Fed. R. Civ. P. 8(a)(2) and discussing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). "[A] "short and plain" statement does not need detailed factual allegations." *Id.* Rather, it "merely requires sufficient detail in the complaint to give a defendant fair notice of the claim and the grounds upon which it rests." *Id.* at 12 (quoting *Twombly*, 550 U.S. at 555).

"However, in order to 'show' an entitlement to relief a complaint must contain enough factual material 'to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Id.* at 12 (quoting *Twombly*, U.S. at 555 (citations omitted)). This review entails "'isolat[ing] and ignor[ing] statements that simply offer legal labels and conclusions or merely rehash[ing] cause of action elements,' then 'tak[ing] the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see[ing] if they plausibly narrate a claim for relief.'" *Justiniano v. Walker*, 986 F.3d 11, 19 (1st Cir. 2021) (quoting *Zell v. Ricci*, 957 F.3d 1, 7 (1st Cir. 2021)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard is "not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

In determining whether a pleading states a plausible claim, a court must consider the well-pled allegations as a whole rather than individually. *See Ocasio-Hernandez*, 640 F.3d at 14 ("The question confronting a court on a motion to dismiss is whether *all* the facts alleged, when viewed in the light most favorable to the plaintiffs, render the plaintiff's entitlement to relief plausible."); *id.* at 15 (stating that "the Supreme Court has suggested that allegations that would individually lack the heft to make a claim plausible may suffice to state a claim in the context of the complaint's other factual allegations" and citing *Twombly*, 550 U.S. at 557).

### B. Motion under Rule 12(e)

Under Rule 12(e), "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Rule 12(e). Relief under Rule 12(e) "is the most suitable remedy where . . . the plaintiff is proceeding *pro se* and the parties are unable to engage in discovery until they are capable of identifying the specific claims against the specific individuals." *Carter v. Newland*, 441 F. Supp. 208, 214 (D. Mass. 2006).

### III. Discussion

#### A. Jarvis's Motion to Dismiss or for a More Definite Statement.

Jarvis's primary arguments in support of her motion to dismiss under pursuant to Rule 12(b)(6), are: (1) Thomas's factual allegations are insufficient to support a claim of any wrongdoing; (2) Thomas has failed to indicate whether he is bringing a claim for negligence, a claim for deliberate indifference, or both; and (3) Thomas's assertion that Jarvis racially discriminated against him is conclusory. The Court addresses each argument in turn.

Considering Thomas's well-pled factual allegations in their entirety, the Court concludes that Thomas has sufficiently pled a state law medical malpractice claim against Jarvis, *see Parr v. Rosenthal*, 475 Mass. 368, 376 (2016) (litigant may bring a medical malpractice claim by alleging plead that a medical provider caused them injury and committed a breach of the standard of care and skill of the average member of the profession practicing in their specialty), and a federal claim for deliberate indifference to a serious medical need, in violation of the Eighth Amendment to the United States Constitution, *see Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976). Jarvis inappropriately considers each factual allegation in isolation and demands a pleading standard in excess of what is required by Rule 8(a).[4] Thomas identifies the relevant time period of the alleged misconduct, and alleges that Jarvis denied him previously prescribed medicine for Post-Traumatic Stress Disorder ("PTSD") and that his mental condition deteriorated as a result. In addition, Thomas asserts that Jarvis ignored letters from Prison Legal Services concerning his need for medicine to treat his PTSD.[5] These allegations provide Jarvis with sufficient notice of the factual basis of Thomas's claims and state a plausible claim.

### 1.     Nature of Thomas's Claim for Inadequate Medicare Care

Notwithstanding the Court's conclusion that Thomas has stated a claim for negligence and deliberate indifference by Jarvis, his amended complaint does contain a pleading deficiency with regard to this defendant: he does not state whether he is asserting a claim under one or both theories of liability (a state claim for medical malpractice or a federal claim for deliberate

---

[4] Jarvis also incorrectly asserts that Thomas "fails to explain how Ms. Jarvis allegedly refused to help him" and "fails and further fails to specify any mental health condition." Jarvis Mem. at 5 [ECF No. 38]. These assertions are incorrect, as Thomas clearly alleges that Jarvis "refused to give [him] medicine that I'm prescribed by my doctor for severe P.T.S.D." Am. Compl. ¶ 6.

[5] The Court notes that Thomas did include in a previous filing two letters (one to the BCCF superintendent and one to the BCCF medical director) informing the recipients of Thomas's previous diagnosis of PTSD and the prescription for Zoloft to address his condition. [ECF No. 13 at 3, 5].

indifference). While a plaintiff's failure to identify his exact legal theory of liability is not always significant, in this case the distinction between a claim for negligence and one for deliberate indifference is relevant. Under Massachusetts law, a state law claim for medical malpractice (whether asserted in state or federal court) must be submitted to a state court medical tribunal (consisting of a state court judge, a medical provider and an attorney). *See* M.G.L. ch. 231, § 60B. The tribunal holds a hearing at which the plaintiff must present evidence that, if properly substantiated "is sufficient to raise a legitimate question of liability appropriate for judicial inquiry." *Id.* If the tribunal finds for the defendants, the plaintiff may pursue the usual judicial process (whether in state or federal court) only if he files a $6000 bond within 30 days of the tribunal's finding. *Id.* Upon motion of the plaintiff, a court may reduce, but not eliminate, the bond requirement. *Id.*[6] Thus, if Thomas is asserting a claim for medical negligence, the Court will temporarily transfer said claim to a state court for preliminary consideration by a medical tribunal.[7]

    As a practical matter, any constitutional claim for inadequate medical care will be stayed pending the decision of the medical tribunal. If, however, Thomas is not bringing a state medical malpractice claim, his prosecution of any Eighth Amendment medical care claim will proceed without review by a state tribunal. There is no bond requirement for pursing a federal claim for constitutionally inadequate medical care.

    In the interest of judicial economy, the Court will assume that Thomas is not pursuing a state medical malpractice claim. If Thomas wishes to pursue a state medical malpractice claim

---

[6] Where a medical tribunal has decided in favor of a defendant and the plaintiff is pursuing his medical malpractice in federal court, the federal court has jurisdiction over any request for a reduction in bond or challenge to the tribunal's ruling. *See Washington v. Gagliani*, 477 Mass. 1006, 1008 (2017).

[7] The decision of the medical tribunal is not admissible before a jury. *See Beeler v. Downey*, 387 Mass. 609, 617 (1982).

or does not want to pursue a constitutional claim, he must so inform the Court and the parties within fourteen (14) days of the date of this order.

### 2. Thomas's Claim that Jarvis Discriminated Against Him

Jarvis is correct in asserting that the amended complaint "contains zero context for the conclusory statement that Ms. Jarvis discriminated against him." Jarvis Mem. at 5. Because the amended complaint does not contain any factual allegations to support his conclusory assertion that Jarvis's alleged misconduct was motivated by a racially discriminatory animus, the amended complaint fails to state a claim of racial discrimination by Jarvis.

### B. Motion of Montaldo, Montero, and Conely for a More Definite Statement

In their memorandum in support of their motion for a more definite statement, defendants Montaldo, Montero, and Conely assert that the amended complaint does not provide them "with sufficient context or notice to enable them to frame a responsive pleading . . . and fails to clearly delineate each of Plaintiff's claims or state the legal foundation upon which each claim is based." [ECF No. 41 at 2]. These defendants also argue the amended complaint "does not detail any harm the Plaintiff may have suffered or offer any prayers for relief . . . and "does not indicate whether the allegations are being brought against the Defendants in their official or individual capacities." *Id.* Finally, the defendants contend that the amended complaint "makes improper references to individuals not named as defendants." *Id.*

Here, the amended complaint is not so vague or ambiguous that the defendants cannot reasonably prepare a response or engage in discovery. In addition, the mention of persons that are not defendants is not "improper." It may be that some of the claims could be subject to dismissal under Rule 12(b)(6), but a more definite statement is not necessary to file a motion for this relief.

Notwithstanding, the Court can settle the question of whether the claims against these defendants, who are presumably employed by the Commonwealth, are official or individual capacity claims. *See Powell v. Alexander*, 391 F.3d 1, 22 (1st Cir. 2004) ("[C]ourts are not limited by the presence or absence of language identifying capacity to suit on the face of the complaint alone."). "Personal [or individual]-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). In contrast, official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Id.* (quoting *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690, n. 55 (1978)).

Here, there are no factual allegations that would support official capacity claims against the defendants. The only reasonable way to read the complaint is that Thomas seeks to hold the defendants personally liable for their own actions. Further, Thomas cannot bring official capacity claims under 42 U.S.C. § 1983, the statute under which a litigant may bring a claim for violation of federal rights against a "person" acting under the color state law. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); 42 U.S.C. § 1983. Finally, subject to exceptions not identified in this action, Thomas cannot bring official capacity claims against state officials in a federal court. The state's Eleventh Amendment immunity precludes such claims. *See Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam); *Hudson Sav. Bank v. Austin*, 479 F.3d 102, 105-06 (1st Cir. 2007).

Thus, Thomas has not stated official capacity claims against Montaldo, Montero, and Conely.

**IV.     Motions Filed by Thomas**

On December 3, 2021, Thomas filed a one-page motion in which he asks the Court to "attach" the document to this case "accussing [sic] the parties involved in retaliation for moving the plaintiff to Bristol County [House of Correction]." [ECF No. 47]. This motion is DENIED. To the extent that Thomas seeks to bring a claim that he was wrongfully moved to the Bristol County House of Correction, he must do so in a separate lawsuit. Similarly, Thomas's motion to be transferred for safety reasons to a facility in Duke's County is DENIED. [ECF No. 48]. The matter is improperly raised in this action for several reasons, including the fact that none of the named defendants would have the authority to effectuate the requested transfer.

Thomas's motion for the Court to issue a subpoena requiring BCCF officials to produce certain video recordings is DENIED without prejudice. [ECF No. 49]. To the extent that these videotapes are relevant to this action, he may seek them in discovery directly from the defendants or, as is necessary, subpoena the relevant BCCF officials to produce them.

**V.     Conclusion**

In accordance with the foregoing, the Court hereby orders:

A.     Jarvis's motion for dismissal, or, in the alternative for a more definite statement [ECF No. 37], is DENIED in part and GRANTED in part as follows:

    1.     Insofar as Jarvis moves for dismissal, her motion is DENIED as to the claim of inadequate medical care but ALLOWED as to the claim of racial discrimination.

    2.     Insofar as Jarvis moves for a more definite statement, the motion is DENIED.

    3.     Thomas's claim for inadequate medical care shall be construed only as stating a claim for denial of his rights under the Eighth Amendment, and not one for medical

malpractice. If this construction of Thomas's medical care claim is incorrect, Thomas shall notify the Court and the parties within fourteen (14) days of the date of this order.

  B. The motion of Montaldo, Montero, and Conely for a more definite statement [ECF No. 40] is DENIED.

  C. To the extent that Thomas is asserting claims against Montaldo, Montero, or Conely in their official capacities, said claims are DISMISSED.

  D. Thomas's pending motions [ECF Nos. 47, 48, 49] are DENIED.

  E. The defendants shall respond to the amended complaint within twenty-one (21) days of the date of this order.

  IT IS SO ORDERED.

 3/8/2022           /s/ Allison D. Burroughs
DATE            UNITED STATES DISTRICT JUDGE